HARMON v CITY OF SOUTHFIELD

Docket No. 78-619. Submitted June 12, 1979, at Detroit.—Decided August 20, 1979. Leave to appeal applied for.

Maurice J. Harmon became a probationary member of the Southfield Police Department in October, 1974. At the end of his one-year period of probationary employment, he was denied permanent appointment. A hearing was held before the Southfield Police and Fire Civil Service Commission resulting in a decision affirming Harmon's discharge. On appeal to the Oakland Circuit Court Harmon's dismissal was affirmed, Robert L. Templin, J. In plaintiff's appeal to this Court, he contends that the commission applied an improper legal standard in determining that his dismissal was for cause. *Held:*

A probationer may be denied permanent appointment where his conduct or capacity is not satisfactory to the appointing officer. The appointing officer does not have unlimited discretion in denying permanent employment to a probationer. The basis for denial cannot be arbitrary or capricious nor can he use discriminatory reasons which are racial, sexual or illegal. The commission did not apply an incorrect standard in determining that plaintiff's dismissal was justified. Five reasons were given, all have relevance to his fitness for police work and were supported by competent, material and substantial evidence.

Affirmed.

1. MUNICIPAL CORPORATIONS — LABOR RELATIONS — POLICE — PROBATIONARY EMPLOYEES — DISCHARGE — HEARINGS ON DISMISSAL — STATUTES.

The appointment of a probationer to permanent employment on a city police department may be denied where his conduct or capacity has not been satisfactory to the appointing officer; if permanent appointment is denied, the probationer is entitled to a hearing before the civil service commission (MCL 38.511; MSA 5.3361).

REFERENCES FOR POINTS IN HEADNOTES
[1, 3] 15A Am Jur 2d, Civil Service §§ 56, 57.
[2] 15A Am Jur 2d, Civil Service § 33.
[4] 15 Am Jur 2d, Civil Rights § 148.

2. LABOR RELATIONS — PROBATIONARY EMPLOYEES — DEFINITIONS.

 A probationer for employment purposes is defined as one whose fitness is being tested on a trial basis.

3. MUNICIPAL CORPORATIONS — LABOR RELATIONS — POLICE — PROBATIONARY EMPLOYEES — TENURED EMPLOYEES — GROUNDS FOR DISMISSAL.

 The applicable standard of cause, in the dismissal of a probationary employee from a city police department, is different from that applied to tenured officers; a probationer may be refused permanent employment where he has failed to satisfy his superior's expectations even though his conduct is not so reprehensible as to be grounds for dismissing a tenured officer.

4. MUNICIPAL CORPORATIONS — LABOR RELATIONS — PROBATIONARY EMPLOYEES — PERMANENT APPOINTMENT — DISCRETION — ABUSE OF DISCRETION.

 An appointing officer of a city does not have unlimited discretion in denying permanent employment to a probationer in the police department; permanent appointment cannot be denied for arbitrary or capricious reasons nor can the appointing officer engage in racial, sexual or other illegal discrimination.

Maurice J. Harmon, *in propria persona.*

*Sigmund A. Bera,* Southfield City Attorney, and *Ruth E. Fair,* Assistant City Attorney, for defendant.

Before: J. H. GILLIS, P.J., and BEASLEY and R. M. RANSOM,* JJ.

J. H. GILLIS, P.J. Plaintiff, Maurice J. Harmon, became a probationary member of the Southfield Police Department in October, 1974. At the end of his one-year period of probation he was denied permanent appointment. A hearing was held before the Southfield Police and Fire Civil Service Commission, resulting in a decision affirming plaintiff's discharge. On appeal, the circuit court affirmed.

---

* Circuit judge, sitting on the Court of Appeals by assignment.

The only issue meriting discussion is plaintiff's contention that the commission applied an improper legal standard in determining that plaintiff's dismissal was for cause.

Section 11(a) of the Firemen and Policemen Civil Service Act provides in part as follows:

"All original appointments to any positions in the police departments, within the terms of this act, shall be for a probationary period of 1 year after the completion of legally required courses of basic training. At any time during the probationary period the appointee may be dismissed for such cause, in the manner provided in this act. If at the close of this probationary term, the conduct or capacity of the probationer has not been satisfactory to the appointing officer, the probationer shall be notified within 10 days, in writing, that he will not receive permanent appointment, whereupon his employment shall cease; otherwise his retention in the service shall be equivalent to his final appointment. The probationer shall be entitled to a hearing before the commission as provided in section 14." MCL 38.511; MSA 5.3361.

In *City of Troy v Troy Civil Service Comm*, 81 Mich App 585; 265 NW2d 759 (1978), this Court held that the above provision entitled a probationary officer to a hearing on dismissal at the end of the probationary period of employment. At such a hearing, the city must establish cause for dismissal.

Section 14 of the act enumerates the criteria for which an officer may be disciplined or discharged. It provides:

"The tenure of every one holding an office, place, position or employment under the provisions of this act shall be only during good behavior and efficient service; and any such person may be removed or discharged, suspended without pay, deprived of vacation privileges

or other special privileges, by the civil service commission, for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment to the public, neglect of duty, violation of the provisions of this act or the rules of the commission, or any other failure of good behavior, or any other acts of misfeasance, malfeasance or nonfeasance in office." MCL 38.514; MSA 5.3364.

The issue before us now is whether "cause" for dismissal of a probationary employee is limited to the criteria listed in § 14 or whether a less strict standard may be used by the appointing authority.

The Civil Service Commission noted that § 11(a) states that a permanent appointment may be denied where the conduct or capacity of the probationer has not been satisfactory to the appointing officer, whereas § 14 speaks of the "tenure" of persons holding employment under the act. Hence, the commission concluded that the standard of "cause" to be applied in the case of a probationary employee is different from that applied to tenured officers.

The commission went on to state:

"Although, as above noted, Section 11(a) of Act 78 authorizes the appointing officer to deny permanent employment to a probationary officer if his conduct of capacity of the probationer has not been 'satisfactory' to the appointing officer, we do not, however, view that language as authorizing the appointing officer to deny permanent employment arbitrarily, or for discriminatory or other unlawful reasons. Accordingly, at the hearing herein, this Commission required Southfield's Appointing Officer to establish the grounds and justification upon which he acted in this matter."

We agree that the Legislature did not intend a probationary employee be dischargeable only for

such cause as would be sufficient to dismiss a tenured employee. "Probationer" is defined as "one whose fitness is being tested on a trial basis". Webster's Third New International Dictionary (1965). A tenured officer has proven his ability to do the job and can only be dismissed for those reasons listed in § 14. A probationary officer, on the other hand, is still undergoing evaluation to see whether he is capable of handling the many responsibilities of police work. Hence, he may be refused permanent employment where he has failed to satisfy his superior's expectations even though his conduct is not so reprehensible as to be grounds for dismissing a tenured officer.

Of course, as the commission noted, the appointing officer does not have unlimited discretion in denying permanent employment to a probationer. It cannot be denied for arbitrary or capricious reasons nor can the appointing officer engage in racial, sexual or other illegal discrimination.[1]

We find the commission did not apply an incorrect standard in determining that plaintiff's dismissal was justified.

In addition, the reasons given for plaintiff's dismissal did not contravene the above standard. Five reasons were given for his dismissal:

"1. Disregard for the safety of citizens and fellow officers by driving at high rates of speed without just cause.

"2. Display of extreme prejudice against female police officers and females in general.

---

[1] While in *City of Troy v Troy Civil Service Comm,* 81 Mich App 585; 265 NW2d 759 (1978), the Court ruled that a probationer could only be dismissed for cause, the Court did not state whether cause for dismissing a probationer is identical to cause for dismissing a tenured officer. While certain language in that opinion may indicate they are the same, such a conclusion was not essential to the decision in that case.

"3. Disregard of departmental rules, regulations, and procedure; in particular, repeated departures from his assigned area and from the City of Southfield without permission, and without notification to the Police Department dispatcher.

"4. A contemptuous attitude toward superior officers and the Court.

"5. The judgment of his superior officers that Officer Harmon has not and would not properly adapt to the conduct required of a Southfield police officer."

These charges all have relevance to a person's fitness for police work and were supported by competent, material and substantial evidence. While the fifth item would be too vague alone to support dismissal, when read in conjunction with the other charges plaintiff was sufficiently apprised of the reasons permanent appointment was denied.

Affirmed. No costs, a public question being involved.